[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13530
Non-Argument Calendar

_____

D.C. Docket No. 8:15-cv-01350-JDW-MAP


CECIL MCKINNON,

                                        Petitioner - Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                        Respondents - Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(June 12, 2019)

Before JORDAN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Cecil McKinnon appeals the district court's denial of Ground 7 in his petition for habeas corpus, filed under 28 U.S.C. § 2254, on procedural default grounds. For the following reasons, we affirm.[1]

## I

Mr. McKinnon is currently serving a life sentence, plus a consecutive term of 15 years' imprisonment, for attempted first-degree murder and shooting into an occupied vehicle. According to Mr. McKinnon, although he had a firearm on him at the time of the shooting, it was another individual, standing next to Mr. McKinnon, who fired the shots into the vehicle which struck and paralyzed the victim, Deanthony Williams.

At trial, Mr. Williams testified that he and Mr. McKinnon had an altercation prior to the shooting. The dispute concerned Mr. Williams conducting drug transactions outside the home of Mr. McKinnon's girlfriend. The altercation ended with Mr. Williams heading home to change his shoes in preparation for a fight with Mr. McKinnon. According to Mr. Williams, Mr. McKinnon did not appear to be upset following the argument and did not seem to have any idea that Mr. Williams intended to return for a fight. When Mr. Williams returned, however, he saw Mr. McKinnon with a gun in his hand and saw him fire at him. Mr. Williams was

---

[1] Because we assume the parties' familiarity with the facts, we recount only what is necessary to explain our analysis.

2

immediately transported to the hospital by some friends.  Though he was questioned by officers at the hospital, Mr. Williams did not tell them who the shooter was until 13 days after the incident.

The state also called Cathy Wideman as an eyewitness.  Ms. Wideman testified that, immediately following the altercation, Mr. McKinnon appeared angry and agitated.  When Mr. Williams returned to the scene, Ms. Wideman saw a firearm in Mr. McKinnon's hand, and heard the gunshots.

Jermaine Colbert, Mr. Williams' best friend, also testified that he saw Mr. Williams and Mr. McKinnon argue, and then saw Mr. Williams depart.  Upon Mr. Williams' return, Mr. Colbert heard gunshots as Mr. Williams exited his vehicle, and saw Mr. Williams fall to the ground.  Though he did not see where the shots came from, he testified that they sounded as though they were coming from a tree near the home of Mr. McKinnon's girlfriend and he thought he saw Mr. McKinnon and a few other young men running away from her house.

## II

Mr. McKinnon filed his § 2254 petition in 2015, raising nine separate grounds for relief.  The district court denied relief on all grounds, but granted a certificate of appealability as to Ground 7, which alleged as follows:

> Petitioner was denied his right to due process and effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel

3

misled petitioner on what the state would be permitted to elicit from him if he chose to testify on his own behalf.

D.E. 1 at 17; D.E. 24 at 21.  Specifically, Mr. McKinnon argued that his counsel's performance fell below the constitutionally required Sixth Amendment standard when his attorney led him to believe that, if he were to testify, "the [s]tate would be permitted to elicit the specific nature of his prior felony convictions."  D.E. 1 at 18. Mr. McKinnon claims that, had he known the state was only permitted to elicit the number and not the nature of his prior convictions, he would have taken the stand. If he had taken the stand, Mr. McKinnon further states, he would have testified to several salient points that would have changed the outcome of his trial.

For example, Mr. McKinnon would have testified that Mr. Williams was selling drugs outside the home of Mr. McKinnon's girlfriend, and that Mr. Williams became belligerent when Mr. McKinnon asked him to stop.  Mr. McKinnon would have also testified that another individual shot at Mr. Williams, and that he never raised his firearm, aimed, or shot at Mr. Williams.  Mr. McKinnon ran from the scene down the alley because shots had been fired, and he went to meet his girlfriend to prepare to leave for a vacation to Fort Pierce.  He did not realize Mr. Williams had been shot and, because he saw Mr. Williams' car leaving the scene, believed he was fine.

Mr. McKinnon also says he could have testified about Ms. Wideman's romantic interest in him.  He would have testified that her testimony was the result

of her vendetta against Mr. McKinnon for leading her on and refusing to engage in intercourse with her, and because he had a girlfriend who was pregnant with his child.  Because he did not testify, Mr. McKinnon asserts he could not establish his defense and "the [s]tate's theory of prosecution went unrebutted, and the jury found [him] guilty as charged."

Though he did not raise this ineffectiveness claim in his state court Rule 3.850 postconviction motion, Mr. McKinnon argues that the claim is "substantial" under *Martinez v. Ryan*, 566 U.S. 1 (2012), and, therefore, his failure to exhaust the claim is excused.  We disagree.

"To overcome [a] default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Id.* at 1318.  Mr. McKinnon has failed to satisfy this standard.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner arguing that he received ineffective assistance of counsel must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *See id.* at 687.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.*  Because we conclude that Mr. McKinnon has not adequately demonstrated prejudice, we need not address deficient performance.

To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Three separate witnesses connected Mr. McKinnon to the crime.  One of them, the victim, identified Mr. McKinnon as the shooter.  And one of the others testified that Mr. McKinnon had a firearm at the time of the gunshots.  Aside from his own testimony, Mr. McKinnon cannot corroborate his alternate version that another individual fired the shots at Mr. Williams.  And the additional impeachment evidence Mr. McKinnon wished to raise was already before the jury.  Indeed, the jury already knew from Mr. Williams himself that he waited 13 days to name Mr. McKinnon to the police, and that Mr. Williams was the one who returned in anger. As for Ms. Wideman, the prosecution and the defense both inquired as to whether she had ever had a romantic or sexual relationship with Mr. McKinnon.

Because "[t]he likelihood of a different result must be substantial, [and] not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), Mr. McKinnon's arguments fail.  Accordingly, we affirm the district court's order denying habeas relief on Ground 7.[2]

---

[2] For essentially the same reasons, the ineffectiveness claim fails on the merits even if Mr. McKinnon can overcome the procedural default under *Martinez*.

6

**AFFIRMED.**